1    IN THE UNITED STATES DISTRICT COURT
2    WESTERN DISTRICT OF MISSOURI
3    WESTERN DIVISION
4

5    UNITED STATES OF AMERICA,            )
6                                         )
7              Plaintiff,                 ) No. 3:13-CR-05054-BCW-1
8                                         ) October 18, 2016
9         V.                              ) Springfield, Missouri
10                                        ) Criminal
11   JEDEDIAH STOUT,                      )
12                                        )
13             Defendant.                 )
14

15              SENTENCING TRANSCRIPT
16         BEFORE THE HONORABLE BRIAN C. WIMES
17            UNITED STATES DISTRICT JUDGE
18

19   Proceedings recorded by electronic voice writing
20   Transcript produced by computer
21

22                    APPEARANCES
23   For Plaintiff:        Mr.  James Kelleher
24                         901 St. Louis Street, Suite 500
25                         Springfield, Missouri  65806
26
27   For Defendant:        Mr. David Mercer
28                         901 St. Louis Street, Suite 801
29                         Springfield, Missouri  65806
30
31

Denise Carroll Halasey, CCR, CVR-CM
United States Court Reporter for The Honorable Brian C. Wimes

<u>October 18, 2016</u>

THE COURT:  Let the Court call the case.  This is United States of America versus Jedediah Stout.  Case No. 13:CR-05054.  Can I have parties enter their appearance for the record, please.

MR. KELLEHER:    James Kelleher on behalf of the United States, Your Honor.

MR. MERCER:  David Mercer on behalf of Mr. Stout.

THE COURT:  Good morning.  Okay.  The Court set this matter for sentencing on today's date from a plea that was taken on April 18th, 2016, in front of Judge Rush.  Whereas, Mr. Stout pled guilty to Four Counts.  Count One, Arson, in violation of 18 U.S.C. Section 844(i), a Class C felony.  Count Two, Arson, again, in violation of 18 U.S.C. Section 844(i), Class C felony.  Count Three, damage to religious property, in violation of 18 U.S.C. Section 247(a)(1), Class C felony.  And lastly, Count Four, Freedom of Access to Clinic Entrances Act, in violation of 18 U.S.C. Section 248(a)(3), Class A misdemeanor.

This Court, on May 6th, of 2016, entered the acceptance of the plea of guilty and adjudication of guilt.  A presentence investigation was ordered.

Mr. Mercer, have you had the opportunity to review that report with your client?

MR. MERCER:  I have, Your Honor.

THE COURT:    Okay.  The Court did note that there were some objections, but they didn't appear to be objections that would impact the guideline, is that correct?

THE MERCER:  That's correct.   There were two objections.

1    One, is the standard objection that I make in regards to additional
2  offense conduct beyond the elements of the offense.  I know the Court is
3  familiar with that.   And also, I had made an objection to the alleged
4  restitution amount.  It is my understanding that the government has a letter
5  from the insurance company they are going to proffer.  I have no objection
6  with the admission of that letter.

7    THE COURT:  Okay.

8    MR. KELLEHER:   And Your Honor, I provide the Court with a letter
9  from Columbia Insurance Group indicating that they paid an amount of
10  $701,971.55.

11    THE COURT:   And that is the amount that was set forth in the
12  presentence investigation report, correct?

13    MR. KELLEHER:  Correct.

14    THE COURT:  Okay.

15    MR. KELLEHER:    And that is the information we have.  In terms of
16  anything beyond that, the allegations made by the defense in terms of their
17  objection are really not adequate for me to go into any further detail.  That is
18  what has happened as a result of this fire.

19    THE COURT:  Okay.  So does the government have any objections to
20  the presentence investigation report?

21    MR. KELLEHER:  No, Your Honor.

22    THE COURT:  With that said, the Court will find that the guideline
23  range – the total offense level is 26.  The criminal history category is 1.  The
24  guideline range is 63 to 78 months.

25    With that said, the Court will now entertain recommendations or
26  argument with respect to a sentence.  I'll start with the government.  Mr.
27  Kelleher.

1        MR. KELLEHER: Your Honor, make no mistake about it, the
2 crimes to which the defendant has now pled guilty to are, in fact, acts of
3 terrorism. All too often that term is probably used too lightly, but there
4 is no question that the defendant, by his acts, by his criminal acts,
5 intended to inspire fear, intimidation, and those whose opinions that he
6 frankly didn't share.

7        There is something about burning a religious institution that is
8 particularly disturbing. Whether it is in 1930's Germany or 1960's
9 Alabama, when you go to place of worship where people go to pay
10 homage to their God, where they educate their children, that is a
11 particular serious and despicable act.

12        It is more disturbing perhaps that the defendant in this case took an
13 oath to uphold the laws of the United States, to defend the United States,
14 and in fact, served in its military. And it's ironic I suppose that the
15 defendant came back to this country and did things that he was fighting
16 abroad to protect.

17        In America there are ways to change the laws. Obviously, if you
18 have a disagreement with abortion, there are legal ways to express your
19 displeasure. In America if you have a displeasure with a certain group,
20 there are legal ways you can express that as well. But when you take it
21 upon yourself to burn down religious institutions, to burn down
22 institutions that frankly, in this case, provided services to women that I
23 believe no one would have any issue with. These are profoundly
24 disturbing crimes.

25        And Your Honor, if that was the end of the story, you would have
26 seen far more counts of additional crimes. Criminal acts, criminal
27 charges that carry significant mandatory minimum sentences. Mr.
28 Mercer, to his credit, did an excellent job in representing his client in

1  presenting some very significant mitigating facts in his favor.  While the
2  defendant engaged in these horrific acts of terror, some of those acts can
3  be – I don't know if explained is the right word.  But mitigated by the
4  fact that he obviously suffers from a very profound mental illness that
5  there is some evidence to suggest was developed as a result of his
6  service to this country.  And the government has taken that into
7  consideration in formulating the information to which the defendant has
8  pled guilty to.  And took it into consideration in offering the plea
9  agreement that the government did.

10        Obviously, Your Honor, the defendant's mental illness has made
11  him a profound danger.  And consequently, at this point at least, I
12  believe that it is necessary for a substantial sentence to be imposed so
13  that hopefully the defendant can obtain mental health treatment that he
14  so desperately needs.  And hopefully, if this illness is treatable, he can
15  go on and lead a full and productive life with no further acts of terror.

16         For those reasons, Your Honor, the government recommends a
17  sentence within the sentencing guideline range as set forth in the
18  presentence report.  We can only hope that will be enough time for the
19  defendant to obtain that mental health treatment.  We can only hope that
20  that will enough time to dissuade him from engaging in any further acts
21  of this nature.  I would also respectfully recommend to the Court that
22  following his term of imprisonment that he be placed on supervised
23  release.  And in addition to the term set forth in the presentence report,
24  the government would also respectfully suggest the following terms of
25  supervised release.

26        First, that the defendant shall not possess or use a computer or any
27  other means to access online computer service at any location without
28  prior approval of a probation officer.  And that will include any Internet

1  service provider, bulletin board system or any other public or private
2  computer network.

3      Second, that the defendant shall stay at least 1000 feet away from
4  any facility that is known by the defendant to provide reproductive
5  health care.  That would include pregnancy termination services.  That
6  the defendant, at the discretion of his probation officer be subject to GPS
7  monitoring at exclusion zones as determined by his probation officer.
8  That the defendant shall have no direct or indirect contact with anyone
9  known to the defendant to provide reproductive health care services to
10  include pregnancy termination or any staff members of such an
11  individual.  That the defendant shall not affiliate or associate with any
12  organization advocating violence harassment protests or acts of
13  disobedience involving the provision of reproductive health services,
14  including abortion.  And that the defendant shall permit the United
15  States probation office to search his personal possessions or/and to
16  confiscate any contraband, propaganda or other materials related to the
17  provision of reproductive health services, including abortion.

18      Your Honor, obviously, this is a difficult case.  As a prosecutor
19  when you engage in these activities, my first inclination is to ask the
20  Court to send a person away for as long as they personally can.  I
21  recognize however, in Mr. Stout's case, that there are features that
22  mitigate these crimes somewhat, but clearly the government is
23  profoundly concerned that he continues to impose an extreme danger to
24  not only Muslims and providers of reproductive health, but frankly, to
25  anyone who he disagrees with.

26      For those reasons, Your Honor, it is government's position that a
27  sentence within the guidelines is appropriate.  And that the terms and
28  conditions in supervise release include the special terms and conditions
29  that I just mentioned.  Thank you.

1    THE COURT:  Thank you, counsel.  Mr. Mercer.

2    MR. MERCER:   Your Honor, in this case, the guideline range is
3    63 to 78 months.  In addition to that, there is a 60 month statuary
4    mandatory minimum that is in play.  It is the intent in my sentencing
5    memorandum and it is still my intent today to ask the Court to grant a
6    variance down to the statuary minimum of 60 months.  And I think that
7    there are compelling factors that will support that request.  Of course,
8    this Court is guided by 3553(a) in looking at the history and
9    characteristics of the defendant in the sentencing process.

10    Your Honor, this is a troubling case in a lot of respects, some of
11    which Mr. Kelleher has highlighted.  One aspect though that I find
12    especially troubling is the fact that Mr. Stout did something of amazing
13    difficulty that to my knowledge no one in this courtroom has ever done.
14    And that is he went to a war zone and he faced death and injury of both
15    physical and emotional to serve us.  He went because we asked him to.
16    And he did that to the best of his abilities.  And the result of that was by
17    placing himself in harm's way, he suffered concussive injuries to the
18    brain. He experienced things that damaged him mentally, emotionally,
19    and physically on our behalf.  He didn't do those things by using drugs;
20    he didn't do those things by engaging in reckless activity, he did those
21    because he took an oath to serve the United States of America and to put
22    himself into harm's way.  And he did.  And he was harmed.  He was
23    injured during the course of discharging his efforts as being a person that
24    assisted in the disposal of emissions and explosive devices.  Not
25    something that is understandable to me as someone who has never
26    experienced that.  And he did it to the best of his abilities.  And even
27    though he had training and experience and he did the best he could, he
28    was injured.  And so after serving this country honorably, he came back
29    to the United States to try to make some productive use of the life that he

had now been given, which included things like post-traumatic stress disorder and traumatic brain injury and mental illness. These are the things that he will struggle with for the rest of his life. Some people return from combat duty missing arms and legs. Some people come back blind. Some people come back emotionally damaged. Some people come back with injured brains. And Mr. Stout falls into that later category. And though he has all his limbs and digits, he is nonetheless traumatically and irreparably harmed by what he has given to this country.

These cases are difficult, I think, because in large part in my opinion, and I think it is also brought out by the testimony in the experts, the criminal conduct for which Mr. Stout has pled guilty and been convicted is in extricable linked to the harm that he suffered while in the military. It is one thing to wake up in a morning and to coolly and rationally make the decision to engage in criminal conduct. And that certainly entails a level of criminal punishment that is different than those whose criminality is a function of injury and mental illness. In my sentencing memorandum I go to great length to show to the Court that there is a demonstrated correlation between PTSD and criminal behavior. Mr. Stout is who he is today because of his service to this country. And he will be tomorrow and most likely for the remainder of his future, he will struggle with the things that he currently struggles with.

However, it is not that bleak. There are two reasons why I think this Court should have hope that Mr. Stout can go on and live a life that is law abiding and productive. The first is that he desires to do that. And that desire is found in the fact that he has been compliant with the medical regimen that has been prescribed to him for mental health treatment. He wants to do better. He has a strong desire to live a life

where he is free from the impacts of those mental illnesses. And in addition to that, as I indicted in my sentencing memorandum, there are people in the mental health realm like the people at the Crane Residential Care Home who have talked to Mr. Stout, who have interviewed him, who have looked at his records, and who in their professional opinion who formed the conclusion that he would benefit greatly from the kind of treatment that they offer in those kinds of institutions.

Now, fortunately, the Veteran's Administration has recognized the sacrifice that Mr. Stout made for his country, because they have granted him substantial VA benefits that are directly related to the injuries that he suffered while serving our country. And so he has at his disposal the financial resources necessary to procure and pay for the kind of treatment that Crane Residential Care facility has to offer him. And even if not them, he has the financial where withal to get the kind of treatment that will be effective in mitigated concerns that have been articulated by the government.

So Your Honor, when you look at the history and characteristics of the defendant, of course, you should consider his military record. You should consider the sacrifices he made during his military service. You should consider his mental illness and his mental injuries that he suffers from today. You should also consider that he wants treatment, and that there is available treatment that is deemed to be appropriate and effective in his case.

One of the other things I would ask the Court to look at in terms of his history and characteristics are that in the investigation of this case, Mr. Stout, was very forthcoming and cooperative with the authorities. He made a confession. He gave a statement. He basically told on himself and made the investigation of this case very simple.

In looking at the nature and circumstances of the current offense, the one thing that stood out to me is mentioned in Paragraph 57 of the presentence investigation report. And it indicates that Mr. Stout had obtained mental health treatment prior to the incident offenses. He had been prescribed medicine. However, at the time of the incident offenses, he was not on those medications. So again, there are people in the mental health community believe that he is treatable. That there is a regimen that could be effective. But obviously, at the time, he didn't do what he needed to do to take care of that situation. But now that he has gone through what he has gone through, he is ready and able to take the medications that are prescribed to him.

The statute also asks the Court to look at the kind of sentences that are available. And I would submit to the Court that his term of custody leading up to today is significant in your sentencing calculous. I was surprised to learn that today is three years on the nose from his date of arrest. October 18th, 2013. For 36 months, as of today, Mr. Stout has been continuously incarcerated and that mostly has been in a county jail. And as the Court knows, any jail time is hard, it's unproductive and it's without really any kind of meaningful treatment. Three years is a long time to be in custody and await the outcome of your criminal case. And I think that is important for the Court to consider in deciding what the appropriate outcome is.

The last consideration that I would ask the Court to take into account is what is necessary to promote respect for the law and provide deterrence in justice. The government advocated for a substantial sentence and Congress has insured that by imposing a statutory mandatory minimum of 60 months. I believe that a three month variance to arrive at that mandatory minimum is appropriate. And it will

1   get Mr. Stout to a position where he can engage in the kind of treatment
2   that I have discussed as quickly as possible.

3        Your Honor, all those things taken into account, this is a very
4   unusual case.  I would ask the Court to grant a variance down to 60
5   months and impose that sentence in light of the factors that I have set
6   before you.

7        THE COURT:  Thank you.  Any reply from the government?

8        MR. KELLEHER:  No, Your Honor.

9        THE COURT:  Okay.  Would you client wish to address the
10  Court?

11       MR. MERCER:   Your Honor, at this time he respectfully asks to
12  remain silent.

13       THE COURT:   Mr. Stout, the Court is to impose a sentence that is
14  sufficient but not greater than necessary to comply with the statute.  In
15  doing so, the Court looks to the presentence investigation report.  The
16  Court considers argument of counsel, motions filed with the Court.  And
17  in the end, the Court imposes a sentence that it does believe meets with
18  the requirements.

19       Part of – I do have to look and I agree with counsel for the
20  government – well, let me back up for a second.  I do think this case
21  does represent kind of a different sort of case than what the Court may
22  typically see.  On one hand you have the crime as suggested by counsel
23  for the government, which I believe is horrendous.

24       On the other hand, what I see as I look at you as an individual, the
25  sacrifice that you have made for this country, the very sacrifice that you
26  made probably in some part played a role in your condition now and in

1  the crime itself.  So my intent is always to have a balance.  Using these
2  factors, balance what is a reasonable sentence.  One that is sufficient but
3  not greater than necessary.  Here, the argument is basically for, in
4  essence three months because of the mandatory minimum.

5      With that said, any good reason why the Court should not impose a
6  sentence at this time?

7      MR. KELLEHER:  No, Your Honor.

8      MR. MERCER:  No, Your Honor.

9      THE COURT:   Okay.  Mr. Stout, you are hereby committed to the
10  custody of the Bureau of prisons for a period of 63 months on Counts
11  One, Two, and Three, and 12 months on Count Four.  All of those
12  Counts are to run concurrent.  I think this is a sentence that is sufficient,
13  but not greater than necessary.  And I think it is a sentence that considers
14  all the factors.  I looked at the crime itself.  I looked at your individual
15  characteristics.  You know, for many reasons this could have been on the
16  higher end.  But I do think you have paid a price in the military and the
17  mental injuries that came, can be the very thing with you serving this
18  country, that could have had an impact on you committing this crime.
19  But I still have to balance that against the crime itself.  And again, I
20  always look for the safety of the general public at large.  And part of my
21  job in sentencing is always to try to reflect fairness in a sentence.  I
22  considered all the factors, and I think that the Court did do so sentencing
23  you to the minimum of the guideline range.

24      Now, upon release from prison, you shall be placed in supervised
25  release for a period of three years on Counts One, Two and Three.  And
26  one year on Count Four.  All those counts are to run concurrent.  The
27  Court finds that you don't have the ability to pay the fine; therefore, the

1 fine is waived.  Now, it is ordered for restitution for Counts One and
2 Two – is it this $701,000?

3       MR. KELLEHER:  Yes, Your Honor.

4       THE COURT:  $701,971.55 is imposed.  A lump sum payment in
5 the full amount is ordered due immediately.  If you are unable to pay the
6 full amount immediately, while incarcerated, you shall make payments
7 of $25 dollars or at least 10 percent of earnings, whichever is greater.
8 While on supervised release, monthly payments of $100 dollars or ten
9 percent of gross income, whichever is greater, and that is when you are
10 released from incarceration.  Let me make sure I made this clear.  While
11 you are incarcerated, you shall make $25 or at least 10 percent of your
12 earnings.   Now, restitution shall be paid to Columbia Insurance Group
13 which is set forth in the presentence investigation report.  The Court
14 finds that you don't have the ability to pay the fine; therefore, the fine is
15 waived.

16       Now, pursuant to 18 U.S.C. 3612(g) you may be subject to diligent
17 and default penalties.  Also, you shall notify within 30 days the Clerk of
18 the Court and the United States Attorney's Office Financial Litigation
19 Unit any name change, residence, or mailing address or any material
20 change in your economic circumstances that may affect your ability to
21 pay any restitution.  All payments shall be made to the Clerk of the
22 Court located in Kansas City, Missouri.  You shall pay the special
23 assessment of $325 which shall be due immediately.

24       Now, while on supervised release you shall – do we have – I think,
25 are there any objection?  The Court is going to order the conditions from
26 the record which were suggested from Mr. Kelleher.  And we may have
27 to get that from Mr. Kelleher so we can put that in the J and C.

1    MR. MERCER:  I didn't see that until court today and I do have a
2  few objections.

3    THE COURT:  Sure.

4    MR. MERCER:   My understanding of the first condition has to do
5  with using a computer.  And I don't know that there is anything in the
6  offense conduct section that involves use of the Internet or computer that
7  would necessitate this condition.  And I would object to it on the basis of
8  his First Amendment rights.  I just don't know that there is a factual
9  basis to support this particular requested condition of supervised release.

10    THE COURT:  Well, it was the computer, but there was more to it.
11  Because I feel that is the argument of the rational basis for having it.  I
12  know I had it written down.

13    MR. KELLEHER:  Ultimately, Your Honor, the defendant would
14  have to explain to his probation officer the need for the computer, and it
15  would give probation the ability to monitor his computer usage.  The
16  reason for that particular condition is that extremism and all its forms are
17  discussed very widely on the Internet, and that is ultimately what we are
18  trying to prevent.  I think that preventing the defendant from being able
19  to reach out and contact other likeminded individuals is extremely
20  important for the term of his supervised release.

21    THE COURT:  How do we monitor that?

22    MR. KELLEHER:  And again, it would be monitored by his
23  probation officer.

24    THE COURT:  How does she or he monitor that specifically?

25    MR. KELLEHER:  We do it routinely in child pornography cases.
26  And obviously, the first step would be if the defendant had a computer

1  or needed a computer, he would consult with probation.  And then

2  probation would then have to determine the necessity for the computer

3  and then would be able to monitor.  And then the home visits, frequently

4  what we see is the probation officer going in and checking his Internet

5  history and things along those lines.  But there are ways, obviously, to

6  facilitate his computer use, but also to ensure that he isn't reaching out

7  and communicating with religious or other extremist.

8        MR. MERCER:  Well, Your Honor, the problem here is that there

9  is no evidence in this case that he ever did that.  And in 2016, much less

10  when he departs the Bureau of prisons, and to categorically prohibit him

11  from having any kind of online presence or activity, I just think it is over

12  broad.  In addition to the fact, that this Court has already pointed out that

13  it puts the probation office into a somewhat difficult position to try to

14  monitor that.

15        The second condition that is related to that is not actually assume

16  the Internet for purpose of reading, posting, communicating or reviewing

17  information involving the provision of reproductive health services.  I

18  mean, what they are proposing to do is just that he can't ever read an

19  article in the newspaper or online about reproductive health services.

20  And I mean, that is just overly broad and violates his First Amendment

21  rights.

22        The other thing – and I don't know if the Court wants to deal with

23  these all at once or?

24        THE COURT:  Well, I think 1000 feet from a facility of a

25  reproductive center.  I think that is a condition, and you can make your

26  argument against that.   GPS monitoring, I think that is a proper

27  condition.  You can make your argument against that.

28        MR. MERCER:  My concern is just the reasonableness of that.

1    THE COURT: Reasonableness of what? The 1000 feet or the
2    GPS?

3    MR. MERCER: The 1000 feet.

4    THE COURT: It's very reasonable. And I think it is related.

5    MR. MERCER: Well, that one I think has a factual basis.

6    THE COURT: Right. I mean, object for the record. I'm going to
7    put it as a condition that is standard.

8    MR. MERCER: My main objections are with the ones involving
9    Internet service. Then also there is a requested condition that he not
10   affiliate with any organization advocating violence, harassment, protests
11   or acts of disobedience involving the provision of reproductive health
12   services, including abortion.

13   THE COURT: Won't you be able to affiliate notwithstanding
14   reproductive health services -- wouldn't there be some type of violation,
15   some hate group? Is it in and of itself on the condition of probation?
16   Somehow, you can go and hang out with these individuals who are as a
17   group, home grown terrorists. I mean, I think that would be some sort of
18   violation. I mean, I don't think any affiliation, if there is a concern
19   related to that; I'm not going to make that a condition because quite
20   frankly, I don't understand. Because I think any time there is any
21   organization that promotes it, I think that somehow would be prohibited
22   on supervised release. I guess, I don't know. So, yes, GPS, 1000 feet,
23   yes. And I think they should have the ability – although I don't believe
24   – I think they should have that general condition, I think there is a
25   concern if you're –what you are putting out on your personal computer
26   related to kind of this reproductive health services. That's troubling. So

1 to the extent they can do that.  And maybe I can get with – but I do think
2 that probation does it all the time how they use a computer.

3   MR. MERCER:  And Your Honor, I think the simple way to this is
4 the last condition is the defendant shall not write standard threats to
5 anyone which would be a new laws violation, which is a standard
6 condition of supervised release.  I think that incorporates all the ones I
7 have objections to.  The 1000 feet and the GPS, I understand the Court's
8 position on that.  I think the use of the computer is just overly broad.

9   THE COURT:  I agree.  I think any act that does that in and of
10 itself would be a violation of your condition of supervised release.  It
11 seems to me.  I would get some report if he is engaged in some conduct
12 without a condition of probation.  If nothing else, it's a show cause.

13   So to the extent I cleared it up.  I don't know if I did.  So GPS,
14 1000 feet, yes.  In terms of computer, no.  I think the other two are just
15 by nature of being on supervised release.

16   Anything else?

17   MR. MERCER:  No, Your Honor.

18   THE COURT:  Mr. Stout, you can appeal what I have done here
19 today.  You will have 14 days from final entry of judgment to file a
20 notice of appeal here in the Western District of Missouri.  If you
21 couldn't afford it, you can ask for leave to appeal in forma pauperis.  If
22 you have any questions, you can check with your attorney.    Anything
23 further, Counsel?

24   MR. KELLEHER:  No, Your Honor.

25   THE COURT:  Mr. Mercer?

26   MR. MERCER:  No, Your Honor.  Thank you.

1    THE COURT:   Is there another indictment that may need to be
2    dismissed?

3    MR. KELLEHER:  Oh, yes, Your Honor.   The government at this
4    time would dismiss the original indictment in the matter.

5    THE COURT:  All right.  Thank you.  Mr. Stout, I wish you the
6    best of luck, sir.

7

8

9

10

11                            CERTIFICATE

12    I certify that the foregoing is a correct transcript from the record of
13    the proceedings in the above-entitled matter.

14    November 28, 2016

15                    /s/ Denise Carroll Halasey
16                    Denise Carroll Halasey
17                    United States Court Reporter

18

19

20

21

22

23

24